# Exhibit 2

# Court's Memorandum Opinion and Order

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KARL OLSON, : | |
| Plaintiff, : | |
| v. : | Civil Action No. 02-1371 |
| COLIN POWELL, : | |
| Secretary of State, : | |
| Defendant. : | |

### MEMORANDUM OPINION

Plaintiff, Karl Olson, a Foreign Service Officer in the United States Department of State, brings suit against Colin Powell, Secretary of the Department of State ("DOS"), under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Plaintiff seeks judicial review of a Foreign Service Grievance Board ("FSGB") decision, alleging that the FSGB's refusal to remove two adverse Employee Evaluation Reports ("EER") from his DOS record is "arbitrary and capricious." 5 U.S.C. § 706(2)(a).

This matter is now before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgment. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, and for the reasons stated below, Plaintiff's Motion is **granted in part** and **denied in part**, and Defendant's Motion is **granted in part** and **denied in part**.

*Exhibit 2*

06 1205

FILED
JUN 3 0 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

I.  **BACKGROUND**[1]

A.  **Factual Background**

Plaintiff has been a Foreign Service Officer with the DOS since 1985 and was tenured in 1988. From September 1993 to August 1996, he served as the Chief of the Non-Immigrant Visa ("NIV") Section of the United States Consulate General in Rio de Janeiro, Brazil. His rank at that time was Foreign Service Officer Class Three. In 2000, he was promoted to Class Two.

Plaintiff was the second-ranking officer in a six-officer Consular Section and supervised approximately twenty employees, including up to five American Junior Officers and fifteen Brazilian Foreign Service Nationals ("FSN"). AR at 1305. During his service in Rio de Janeiro, his Consular Section was understaffed, lacked adequate space and resources, and faced a rapidly increasing workload. Id.

According to the Administrative Record, some of Plaintiff's colleagues felt that certain supervisors at the Consulate General in Rio de Janeiro exhibited anti-homophobic sentiments. Donna Hamilton, the Deputy Assistant Secretary for Visa Services, wrote that "comments were made to us both in Rio and Brasilia that indicated homophobic attitudes by management at both posts." AR at 1006.

---

[1] The facts set forth herein are taken from the parties' briefs, their Statements of Material Facts, and the Administrative Record ("AR").

*Exhibit 2*

Consular Affairs Management Analyst Leigh Carter noticed during a 1996 visit to the Consulate that "an atmosphere of homophobia prevailed at the top ranks of th[e] post." Id. at 1007.

Consular Officer Leilani Straw believed that Edwin L. Beffel, the Chief of the Consular Section in Rio de Janeiro, "omitted achievements and included prejudicial statements in [Plaintiff's employment evaluations] because of his homosexual orientation." AR at 1224. She also said there was "joking and derisive comments" about homosexuals at the post. Id.

Consular Officer David Schlaefer was told that Consul General David E. Zweifel was pleased about his coming to the Consulate because Zweifel was "glad that a heterosexual was 'finally' coming into the section." AR at 1246. Schlaefer also said that Zweifel disapproved of homosexuality and that this was "well known in the Consulate community." Id.

Finally Consulate Officer David Connell, who was homosexual and worked for Plaintiff, said that tolerance toward homosexuals ended after Zweifel joined the post in August of 1994. AR at 1015.

In June 1994, an American citizen who needed urgent medical treatment for HIV/AIDS was supposed to return to the United States on a VARIG Airlines flight. AR at 11. The pilot refused to allow the passenger to board the plane because the passenger did not have a medical certificate. AR at 11, 437.

In response, Plaintiff began issuing the pilot single-entry visas, forcing him to reapply for visas every time he had a flight

*Exhibit 2*

scheduled to the United States. AR at 12. The President of VARIG ultimately called Zweifel to complain about the treatment, alerting him that the Brazilian government was prepared to reciprocate by issuing single-entry visas to American airline personnel. AR at 1187. In response, Zweifel ordered that airline personnel should be issued multiple-entry visas. Id.

On August 31, 1994, Zweifel also sent a letter to the President of VARIG, apologizing for the incident and acknowledging that the VARIG pilot had a right to request a medical certificate for the passenger. AR at 437.

On August 3, 1994, the Diplomatic Security office of the Consulate sent a telegram to the DOS's Diplomatic Security office, which read as follows:

> THE FOLLOWING STATE OFFICERS ASSIGNED TO THE CONGEN RIO DE JANEIRO CLEARLY EXHIBIT HOMOSEXUAL PREFERENCES AND RSO REQUESTS BACKGROUND INFO TO CONDUCT PROPER DEFENSIVE BRIEFINGS FOR EACH, INCLUDING RELATIONSHIP REPORTING UNDER PROVISIONS OF 3 FAM 609. WE HAVE NOT LEARNED OF ANY INFAMOUS OR NOTORIOUS CONDUCT NOR HAVE CI CONCERNS, SUCH AS CONTACT PATTERNS, ARISEN. PLEASE ADVISE IF THESE MEN ARE DECLARED. IF FURTHER ACTION IS APPROPRIATE PLEASE ADVISE.

Def.'s Statement of Material Facts at 3. Plaintiff was one of the two officers named in the cable. Id. According to an August 23, 2000, memo from Juliane Tilton, then the Consulate's Regional Security Office Secretary, the Consulate received in response a cable indicating that "sexual orientation (homosexuality) was no

Exhibit 2

longer considered an issue by the Department of State."[2] AR at 693.

On an unspecified date, Beffel gave Plaintiff a "mock three-dollar bill with the words 'Queer Reserve Note' printed on the front." Pl.'s Mot. at 3. Plaintiff alleges that this was intended to deride him because of his homosexuality. Id.

While serving in Rio de Janeiro, Plaintiff received two consecutive Employee Evaluation Reports ("EER"),[3] covering the periods of (1) August 28, 1994, to April 15, 1995 ("First EER"), and (2) April 16, 1996, to August 30, 1996 ("Second EER"). His rating officer for each EER was Beffel. His reviewing officer for the First EER was Consul General James M. Derham. His reviewing officer for the Second EER was Zweifel.

B.   **Procedural Background**

On May 22, 1998, Plaintiff filed a grievance with the DOS, alleging that the EERs covering his time in Rio de Janeiro were inaccurate and falsely prejudicial, omitted favorable information, contained inadmissible comments, and were based on the anti-

---

[2] Tilton indicated in the memo that she did not recall the exact date of the response but thought it was received soon after the initial cable was sent.

[3] Every year, foreign service officers are evaluated by their supervisors in EERs. Gonzalez v. United States Dep't of State, 135 F. Supp.2d 193, 194 (D.D.C. 2001). Those EERs reflect the assessment of a rating officer and a reviewing officer. Toy v. United States, 263 F. Supp.2d 1, 3 (D.D.C. 2002). Foreign service selection boards use the EERs to evaluate foreign service officers for promotion or selection out of the service. Id.

Exhibit 2

homosexual bias of Beffel and Zweifel.

On September 30, 1998, the DOS denied Plaintiff's grievance. On November 25, 1998, Plaintiff appealed the decision to the FSGB.

On June 13, 2000, the FSGB issued an Order in response to a Motion to Compel filed by Plaintiff. The Order considered several discovery requests that Plaintiff had submitted on December 15, 1998, December 16, 1998, and April 22, 1999. The FSGB found that the 1994 cable and any response to the cable were discoverable and ordered the Department to provide Plaintiff with a copy of both documents. AR at 572.

On April 4, 2002, the FSGB issued an opinion, finding that the EERs in question were not inaccurate, falsely prejudicial, or otherwise defective. The FSGB also found that there was "weighty evidence [of anti-homosexual bias] from credible outside observers," but held that the evidence of bias was irrelevant because it had already determined that Plaintiff's EERs were not inaccurate or falsely prejudicial. AR at 1356.

On July 7, 2002, Plaintiff filed the instant action. He alleges that the FSGB's decision was arbitrary and capricious. He requests that the Court: (1) reverse the FSGB and order his promotion, retroactive to 1994; (2) expunge his First EER; (3) extend his time-in-class for an additional year; (4) expunge inadmissible comments from his Second EER; (5) award equitable damages, compensatory damages, and costs.

Exhibit 2

II.  **STANDARD OF REVIEW**

Summary judgment will be granted when there is no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c). Since this case involves a challenge to a final administrative decision, the Court's review on summary judgment is limited to the administrative record. Holy Land Found. for Relief and Dev. v. Ashcroft, 333 F.3d 156 (D.C. Cir. 2003) (citing Camp v. Pitts, 411 U.S. 138, 142 (1973)); see also Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002) (citing Fund for Animals v. Babbit, 903 F. Supp. 96, 105 (D.D.C. 1995); Richards v. Immigration & Naturalization Serv., 554 F.2d 1173, 1177 (D.C. Cir. 1977)) ("Summary judgment is an appropriate procedure for resolving a challenge to a federal agency's administrative decision when review is based upon the administrative record").

The Foreign Service Act provides that the APA "shall apply without limitation or exception" to a district court's review of a decision by the FSGB. 22 U.S.C. § 4140(a). Under the APA, an agency's action may be set aside only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "The arbitrary and capricious standard [of the APA] is a narrow standard of review." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).

In reviewing an agency action, the Court "must consider whether the [agency] decision was based on a consideration of the

Exhibit 2

relevant factors and whether there has been a clear error of judgment." Id. Because the Court's role is merely to ensure that the agency's decision was based on relevant factors and not a "clear error of judgment," the Court may not substitute its judgment for that of the agency. Id. If the "agency's reasons and policy choices ... conform to 'certain minimal standards of rationality' ... the [agency decision] is reasonable and must be upheld." Small Refiner Lead Phase-Down Task Force v. EPA, 705 F.2d 506, 521 (D.C. Cir. 1983) (citation omitted); see Kisser v. Cisneros, 14 F.3d 615, 619 (D.C. Cir. 1994)(noting that "[t]he court must determine whether the agency has articulated a 'rational connection between the facts found and the choice made.'") (citations omitted). This standard presumes the validity of agency action. See Ethyl Corp. v. EPA, 541 F.2d 1, 34 (D.C. Cir. 1976)(en banc).

Despite this deferential standard, the Court will "intervene to ensure that the agency has 'examine[d] the relevant data and articulate[d] a satisfactory explanation for the action.'" Petroleum Communications, Inc. v. FCC, 22 F.3d 1164, 1172 (D.C. Cir. 1994) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)). Moreover, the agency's decision must evince "a rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43. Thus, this Circuit has held that "[w]here an agency has failed to provide a

*Exhibit 2*

reasoned explanation, or where the record belies the agency's conclusion, we must undo its action." Id. (citing Am. Tel. & Tel. Co. v. F.C.C., 974 F.2d 1351, 1354 (D.C. Cir 1992)).

### III. ANALYSIS

Plaintiff argues that he is entitled to summary judgment because the FSGB: (1) failed to articulate adequate explanations for the facts found and decisions made;[4] (2) failed to consider allegations of sexual orientation bias against him; (3) failed to consider allegations of Beffel's personal and managerial dysfunction;[5] and (4) employed arbitrary and capricious procedures that resulted in prejudice against him.

Defendant contends that it is entitled to summary judgment because Plaintiff: (1) failed to meet his burden of establishing that the EERs in question are inaccurate, falsely prejudicial, omit favorable information, and contain inadmissible comments; and (2) has not shown prejudice resulting from the alleged procedural failures. Defendant also maintains that summary judgment should be denied because the FSGB's decision that the EERs were reasonable

---

[4] In light of the Court's decision to remand this case, it is unnecessary to consider this issue at this time.

[5] It is not entirely clear whether the FSGB directly considered this factor but tried to avoid using pejorative terms in discussing it or whether it was entirely ignored. Given the decision in this case, the Court notes that it certainly is a factor that should be considered by the FSGB on remand.

rendered allegations of homosexuality and managerial dysfunction irrelevant.

A. **The FSGB's Decision Was Arbitrary and Capricious for Failure to Specifically Consider Alleged Anti-Homosexual Bias**

Plaintiff argues that the FSGB failed to "examine or even consider any relevant information on the sexual orientation discrimination among the managers at the U.S. Consulate in Rio and the Embassy in Brasilia." Pl.'s Mot. at 12. Plaintiff argues that he presented significant evidence of Beffel's and Zweifel's anti-homosexual bias, including: (1) the August 1994 cable regarding his homosexuality; (2) Zweifel's reaction to the incident involving a VARIG Airlines pilot; (3) the mock three-dollar bill given to him by Beffel; and (4) observations by credible colleagues about the anti-homosexual bias of both men. According to Plaintiff, this alleged bias negatively affected his EERs, and failure to consider a factor of such significance was arbitrary and capricious.

Defendant responds that the FSGB did consider the issue, claiming that the FSGB devoted eight pages of its decision to the subject.[6] Defendant also maintains that Plaintiff failed to meet

---

[6] This response is truly misleading. While Defendant is correct that eight pages of the FSGB's decision discussed the issue of anti-homosexual bias, the majority of those eight pages simply articulated the evidence and arguments on both sides. In actuality, the FSGB devoted only two pages of analysis to the issue and merely concluded that the evidence need not be considered, without analyzing the evidence as it pertained to the EERs.

10

*Exhibit 2*

his burden of proving that he suffered harm as a result of any alleged anti-homosexual bias.

The FSGB's decision was arbitrary and capricious because it failed to consider what the FSGB itself characterized as "weighty evidence" of Beffel's and Zweifel's anti-homosexual bias. AR at 1356. The FSGB was charged with determining whether Beffel and Zweifel had fairly reviewed Plaintiff's performance. Thus, evidence of any bias would clearly be relevant to a decision about the fairness and accuracy of their judgment. The FSGB, however, reasoned that it need not even consider the evidence of bias because it had already determined that the EERs were fair. The logic of this reasoning is hard to fathom. How could the FSGB conclude that the EERs were fair and accurate, and ignore a relevant factor, such as bias, in determining whether the subjective judgments contained in the EERs were fair and accurate? Thus, the FSGB's decision both fails to consider a relevant factor and fails to evince a "rational connection between the facts found and the choice made." State Farm, 463 U.S. at 43. Therefore, the FSGB's decision was arbitrary and capricious and must be remanded for the FSGB to consider evidence of alleged anti-homosexual bias.[7]

---

[7] The Court recognizes that, on remand, the FSGB may well reach the same conclusion as it did previously. Plaintiff undoubtedly had serious personality issues, as reflected in his EERs. However, the job of the FSGB is to consider all relevant evidence in determining whether the judgments and evaluations (which were necessarily subjective) of Beffel and Zweifel were tainted by bias or were, in their totality, fair and accurate.

11

*Exhibit 2*

### B. The FSGB's Decision Was Not Tainted by Procedural Errors Because Any Such Errors Were Not Prejudicial

Plaintiff maintains that the FSGB made several procedural errors that prejudiced him and resulted in an arbitrary and capricious decision. Specifically, he argues that: (1) the panel members in the instant grievance and an earlier grievance overlapped, resulting in a decision that relied on facts outside the record; (2) the FSGB did not expeditiously decide the grievance; and (3) the Department inappropriately refused to provide discovery of the 1994 cable and response to that cable.

Defendant counters that (1) there were no procedural errors and (2) any procedural errors are harmless because Plaintiff has not proven that he was prejudiced.

To meet his burden, Plaintiff must prove that procedural errors existed and that prejudice has resulted from the alleged procedural errors. Carstens v. Nuclear Regulatory Comm'n, 742 F.2d 1546, 1558 (D.C. Cir. 1984) ("the onus is squarely on [the plaintiff] to establish prejudice").

Plaintiff fails to meet his burden. First, he fails to offer any evidence that the members of his panel were improperly chosen, were biased, or in fact based their decision on facts outside the record.[8] Furthermore, he fails to cite any actual prejudice that

---

[8] Plaintiff also argues that the panel, with three female members, was unfairly gender biased because he is a homosexual male. He presents no facts in support of this argument, which is without merit.

12

*Exhibit* 2

resulted from the makeup of the panel. Thus, Plaintiff has not met his burden of proving that there was a either a procedural error or prejudice.

Second, Plaintiff has failed to prove that the length of time taken to issue a decision in his case was prejudicial. The length of time between Plaintiff's grievance and the FSGB decision in this case certainly was quite long. However, it is clear from the record that the lengthy time period resulted from numerous discovery and other procedural disputes between Plaintiff and Defendant. Thus, both parties share blame for the delay, and Plaintiff has shown no prejudice from it. Indeed, it allowed him to fully exercise his rights under the grievance process. Thus, he has failed to meet his burden.

Third, Plaintiff has failed to prove that the discovery error alleged was prejudicial. Plaintiff obtained and admitted into the record the initial cable, so no prejudice resulted from the DOS's failure to provide it. The FSGB was able to consider the contents of the cable when making its decision. Therefore, Plaintiff has not met his burden of showing that actual prejudice resulted from alleged procedural error.

IV.  **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Summary Judgement, is **granted in part** and **denied in part**, and Defendant's Motion for Summary Judgment is **granted in part** and **denied in part**.

Exhibit 2

An Order will issue with this Opinion.

February 3, 2005

/s/
Gladys Kessler
U.S. District Judge

14

*Exhibit 2*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KARL OLSON,

    Plaintiff,

    v.                                     Civil Action No. 02-1371

COLIN POWELL,
Secretary of State,

    Defendant.

## ORDER

Plaintiff, Karl Olson, a Foreign Service Officer in the United States Department of State, brings suit against Colin Powell, Secretary of the Department of State ("DOS"), under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. Plaintiff seeks judicial review of a Foreign Service Grievance Board ("FSGB") decision, alleging that the FSGB's refusal to remove two adverse Employee Evaluation Reports ("EER") from his DOS record is "arbitrary and capricious." 5 U.S.C. § 706(2)(a). This matter is now before the Court on Plaintiff's Motion for Summary Judgment and Defendant's Cross Motion for Summary Judgement. Upon consideration of the Motions, Oppositions, Replies, and the entire record herein, it is hereby

**ORDERED** that Plaintiff's Motion is **granted in part** and **denied in part**; it is further

**ORDERED** that Defendant's Motion is **granted in part** and **denied in part**; it is further

*Exhibit 2*

**ORDERED** that the case is **remanded** to the FSGB for consideration of whether anti-homosexual bias unfairly tainted Plaintiff's employment reviews.

February 3, 2005

/s/
Gladys Kessler
U.S. District Judge

**Copies to:** Attorneys of Record via ECF

-2-

*Exhibit 2*