# United States of America



## DEPARTMENT OF STATE

*To all to whom these presents shall come, Greetings:*

I ...fy That Jacqueline Ratner, whose name is subscribed to the document hereunto annexed, ... time of subscribing the same Executive Secretary, Foreign Service Grievance Board, ...pa...nt of State, United States of America, and that full faith and credit are due to her acts as ...h.



In testimony whereof, I, Condoleezza Rice, Secretary of State , have hereunto caused the seal of the Department of State to be affixed and my name subscribed by the Assistant Authentication Officer, of the said Department, at the city of Washington, in the District of Columbia, this sixth day of October, 2006.

_____ Secretary of State

By _____

Assistant Authentication Officer,
Department of State

...ued pursuant to ... State of
...t. 15, 1789, 1 ...8-69; 22
...C 2657; 22USC ... 5 USC
...1; 28 USC 1733 e... 8 USC
...43(f); RULE 44 Fe... Rules of
...vil Procedure.

...ertificate is not valid if it is removed or altered in any way whatsoever



Foreign Service Grievance Board
Suite 3100 SA-15
Washington, D.C. 20522-1531

Telephone: 703-875-5157
Fax: 703-875-5177

October 5, 2006

## CERTIFICATION

I, Jacqueline Ratner, Executive Secretary of the Foreign Service Grievance Board, certify that the attached is a true copy of the bate-numbered pages missing (pages 31-36; 77-81; 93- 95; and 716-719) from the original authenticated Record of Proceedings in the Case No. 98-087 REMAND (Karl Olson). This file contains only unclassified material.

Jacqueline Ratner
Executive Secretary

**JANINE M. BROOKNER**
Attorney at Law

3645 St. Mary's Place, N.W.
Washington, D.C. 20007
Telephone: (202) 338-5743
Facsimile:  (202) 338-6629

5 Tudor City Place  suite 1625
New York, New York 10017
Telephone: (212) 599-7717
Email: jmbrookner@worldnet.att.net

March 29, 2005

COPIES
CASE 98-087
GRIEVANT Olson
AGENCY State
AFSA
PANEL Reidy
G. Davidson
Schulz
CHAIRMAN Reidy
DEPUTY Dragon
DATE 3/30/05
S.

Executive Secretary Kay Anske
Foreign Service Grievance Board
Suite 3100, SA-15
Washington, D.C. 20522-1531

Subject: FSGB 98-087
Appeal of Karl Olson
Remanded

MAR 30 2005

Dear Ms. Anske,

Thank you for your letter of March 23, 2005. We are proposing the following to ensure that both sides, as well as the FSGB, work from identical records and page numbers in preparing legal arguments and citing specific pages in the record.

1. The portion of the Record of Proceedings (RoP) which the Board certified on October 1, 2002 was filed with the Court as Administrative Record (AR) Part A. We propose to refer to documents in this portion of the RoP as "AR Part A," followed by the appropriate page number. Please confirm that this is acceptable to the Board.

2. The portion of the RoP which the Board certified on December 19, 2002 was filed with the Court as AR Part B, Exhibit 1 or Ex 1. We propose to refer to documents in this portion of the RoP as "AR Part B Exhibit 1" or "AR Part B Ex 1," followed by the appropriate page number. Please confirm that this is acceptable to the Board.

The RoP filed with the Court as AR Part A and AR Part B Exhibit 1 was incomplete. The defendants, therefore, made a separate filing of pages 78A-78NN which were included in the AR in an Errata Notice of Filing of Amendment to the

031



JANINE M. BROOKNER
Attorney at Law

3645 St. Mary's Place, N.W.
Washington, D.C. 20007
Telephone: (202) 338-5743
Facsimile: (202) 338-6629

5 Tudor City Place   suite 1625
New York, New York 10017
Telephone: (212) 599-7717
Email: jmbrookner@worldnet.att.net

March 29, 2005

Executive Secretary Kay Anske
Foreign Service Grievance Board
Suite 3100, SA-15
Washington, D.C. 20522-1531

Subject:  FSGB 98-087
          Appeal of Karl Olson
          Remanded

Dear Ms. Anske,

    Thank you for your letter of March 23, 2005. We are proposing the following to ensure that both sides, as well as the FSGB, work from identical records and page numbers in preparing legal arguments and citing specific pages in the record.

1. The portion of the Record of Proceedings (RoP) which the Board certified on October 1, 2002 was filed with the Court as Administrative Record (AR) Part A. We propose to refer to documents in this portion of the RoP as "AR Part A," followed by the appropriate page number. Please confirm that this is acceptable to the Board.

2. The portion of the RoP which the Board certified on December 19, 2002 was filed with the Court as AR Part B, Exhibit 1 or Ex 1. We propose to refer to documents in this portion of the RoP as "AR Part B Exhibit 1" or "AR Part B Ex 1," followed by the appropriate page number. Please confirm that this is acceptable to the Board.

    The RoP filed with the Court as AR Part A and AR Part B Exhibit 1 was incomplete. The defendants, therefore, made a separate filing of pages 78A-78NN which were included in the AR in an Errata Notice of Filing of Amendment to the

032

Administrative Record Part A in September 2003. The FSGB also should have a copy of this material which Mr. Olson submitted to the FSGB on November 25, 1998 as an attachment to his initial grievance appeal filed with the Board. The pages numbered for the Court as AR Part A, 78A-78NN, therefore, are part of the original RoP filed with FSGB.

If Board is unable to locate these pages, I propose their submission into the record to be considered on remand. These pages, specifically AR Part A at 78I, establish one of Mr. Olson's significant contributions to the U.S. visa reciprocity initiative, a policy success which was not even mentioned by his supervisors in his EER. AR Part A at 78A-78NN is attached herewith. Please confirm that this is acceptable to the Board.

We accept your kind offer to go to your office and personally review the record. Please advise how much advance notice you will need.

Sincerely,

Janine M. Brookner
Attorney for Mr. Karl Olson

Cc: Lishman, HR/G
AFSA
Panel: Reidy, G. Davidson, Schulz

033

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Karl Olson,<br><br>    Plaintiff,<br><br>v.<br><br>Colin Powell, et al.,<br><br>    Defendants. | Civil No. 02CV1371 (GK) |

### ERRATA NOTICE OF FILING OF AMENDMENT TO THE ADMINISTRATIVE RECORD, PART A

On September 15, 2003, Plaintiff filed a motion that identified certain enumerated documents that should have been included in the Administrative Record filed by Defendants on August 27, 2003. Defendants have located these documents and, by agreement of the parties, hereby submit those additional documents for inclusion in the Administrative Record. These additional documents should be included in Part A of the Administrative Record between documents numbered 000078 and 000079. Accordingly, they are numbered 000078A-000078NN. Plaintiff withdrew his September 15.th motion on September 23, 2003.

Respectfully submitted,

_____
LISA BARSOOMIAN, DC Bar # 448398
Assistant U.S. Attorney
U.S. Attorney's Office
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 305-4851

034

**OF COUNSEL:**
JULIE OETTINGER
Office of the Legal Adviser
U.S. Department of State

UNITED STATES GOVERNMENT

# memorandum

DATE: 12 October, 1995

REPLY TO
ATTN OF: CONS - Karl Olson

SUBJECT: Embassy Support on the Visa Reciprocity Initiative

TO: OIG Inspection Team - Mr. Bloch

You should know that the record shows that this post opposed the visa reciprocity initiative due to concerns over our ability to deal with it: resources, public relations, etc. The fact that your ear has been filled with such complaints should come as no surprise.

It is my understanding that the GOB saw it as in its interest (finally) to prepare a decree extending the validity of business visas to five years. While I don't think the decree was actually issued before President Fernando Henrique Cardoso's State Visit to Washington in April, I know one decree was issued May 13. President Cardoso also sent legislation to the Brazilian Congress (with a Rush-Rush tag) just before the visit and the Brazilian House approved it. Then it stalled in the Senate.

Attached please find documentary proof of what I told you about the Fiat President's visa case. I remain convinced that, despite press speculation that the Senate would act, if I had simply issued the visa quickly without rubbing it in with Mr. Lore nothing would have happened. As it turned out, I issued the visa Friday morning, he traveled on Saturday and the Senate approved the law on Monday.

The "minor clerical issues" involved a wrong-size photo. The Fiat President's assistant had to fly back-and-forth to Belo Horizonte to get a right-size photo and then to stay overnight until Friday to pick up the visaed passport with a visa date of issue as Friday.

We continue to await Embassy success in persuading Brazil to liberalize further its visa policies. Those who counsel a more moderate approach might find more belief if they could cite a specific, concrete example. The private American citizen whose letter is attached apparently preferred a more pro-active approach.

I remain concerned about your use of the term "punishment." Our government made a decision to inconvenience the Brazilian traveling public to persuade Brazil to change. Although we opposed the decision, as a loyal Foreign Service Officer I accepted it once it was made and, indeed, carried it out to a successful conclusion in the most important area. If we are concerned about "punishment" then we should really ask ourselves if further liberalization is worth it.

036

cc: Team Leader

000078A

OPTIONAL FORM NO. 10
(REV. 1-80)
GSA FPMR (41 CFR) 101-11.6
5010-114
* U.S. GPO: 1992-312-071/50046

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Karl Olson, ) | (8.26.2003) |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) Civil No. 02-1371 (GK) | April 4, 2005 |
| ) | |
| Colin Powell, et. Al., ) | |
| ) | |
| Defendants. ) | |

### DECLARATION OF JULIE OETTINGER

In accordance with the provisions of Title 28, United States Code, Section 1746, I, Julie Oettinger, make the following declaration:

1) I am an Attorney Adviser in the Office of the Legal Adviser at the Department of State. In this capacity, I am serving as Agency counsel for the Department of State in the above-captioned matter.

2) The Executive Secretary of the Foreign Service Grievance Board ("FSGB") compiled the administrative record ("the record") related to the grievance appeal filed by Karl Olson, which was decided by the FSGB on April 4, 2002. The FSGB compiled the record in two parts. Part A consists of 1,359 pages and is filed concurrently herewith.

3) Part A of the record included 2 documents that are considered confidential records pursuant to Section 222(f) of the Immigration and Nationality Act ("INA") (8 U.S.C. 1202(f)). In accordance with that section, these documents are records of the Department of State and/or of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas to enter the United States. Accordingly, these documents cannot be filed with the public administrative record in this matter and have been removed from Part A of the record. Those documents had been included in Part A of the administrative record at pages 400-401 and 404-423. These documents are described as follows:

   a. The document originally included in Part A of the record at pages 400-401 is a telegram dated May 30, 1996 from the American Consulate in Rio De Janeiro to the Department of State and other agencies and concerns a visa application of a specific individual.

077

b. The document originally included in Part A of the record at pages 404-423 is printout, dated January 4, 1999, of personal visa information from a visa processing database.

4) Part B of the record (attached hereto as Exhibit 1) included 11 classified documents. In preparation for filing of the administrative record with the District Court in this matter, I submitted the 11 documents to the State Department's Bureau of Administration, Office of Information Resources Management, Programs and Services (A/RPS/IPS), which is responsible for records management within the Department of State, for a declassification review.

5) As a result of that review, four of the documents were declassified and have been annotated accordingly. See Part B of the record at pages 120, 211-212, 432-433, and 510-512.

6) Three documents in part and four documents in their entirety remain classified in accordance with Executive Order 12958 on National Security Information. Accordingly, these documents cannot be filed with the public administrative record in this matter and have been removed from Part B of the record.

7) I have attached the unclassified portions of three documents hereto as Exhibit 2. These documents were included in the administrative record at pages 133, 172-173, and 184-185.

8) Four of the documents are classified in their entirety. Those documents had been included in Part B of the administrative record at pages 1, 142-144, 662-664 and 673-688. These documents are described as follows:

   a. The document originally included in Part B of the record at page 1 is a SECRET telegram, dated December 10, 1998 from the Department of State to the American Embassy in Lisbon, Portugal. The telegram consists of three short paragraphs and relates to an applicant for a visa in Portugal. (This document also contains information that is deemed confidential pursuant to Section 222(f) of the INA.)

   b. The document originally included in Part B of the record at pages 142-144 is a CONFIDENTIAL telegram, dated November 10, 1994, from the Department of State to the American Embassy in Brasilia, Brazil. The telegram is a report of discussions between U.S. and Brazilian officials on taxation issues.

   c. The document originally included in Part B of the record at pages 662-664 is a CONFIDENTIAL telegram, dated December 18, 1998, from the American Embassy in Tel Aviv, Israel to the Department of State and the American Consulate in Jerusalem. It relates to the decision to place the U.S. Embassy in Tel Aviv on "ordered departure" status, pursuant to which certain Embassy personnel are required to leave the country due to security concerns.

d. The document originally included in Part B of the record at pages 673-688 is the CONFIDENTIAL portion of a document entitled "Mission Brazil FY 1996-2000 MPP." "MPP" stands for "mission program plan." The document includes a report of the performance of the U.S. mission in Brazil for 1995 and an action plan for 1996-2000.

9) Part B of the record also included 24 documents or portions thereof that are considered confidential records pursuant to Section 222(f) of the Immigration and Nationality Act (8 U.S.C. 1202(f)). In accordance with that section, these documents or portions thereof are records of the Department of State and/or of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas to enter the United States. Accordingly, these documents cannot be filed with the public administrative record in this matter and have been removed from Part B of the record.

10) I have attached portions of 9 documents that do not include confidential information pursuant to Section 222(f) hereto as Exhibit 3. These documents were included in the administrative record at pages 3-4, 6-7, 69, 122, 279, 378-379, 410, 560-561, 563-565.

11) 15 of the documents are considered confidential pursuant to Section 222(f) in their entirety. Those documents had been included in Part B of the administrative record at pages 8, 9-10, 11, 12, 13-14, 15, 16-17, 18-19, 20, 21, 22-23, 24-25, 26, 381, and 562. These documents are described as follows:

   a. The document originally included in Part B of the record at page 8 is a telegram, dated April 26, 1996, from the Department of State to the American Consulate in Rio De Janeiro concerning the visa application of a specific individual.

   b. The document originally included in Part B of the record at pages 9-10 is a telegram, dated April 8, 1996, from the American Consulate in Rio De Janeiro to the Department of State and other agencies regarding personal information in a visa processing database.

   c. The document originally included in Part B of the record at page 11 is a printout, dated March 28, 1996, of personal visa information from a visa processing database.

   d. The document originally included in Part B of the record at page 12 is a telegram, dated April 15, 1996, from the American Consulate in Recife to the Department of State and other agencies regarding the visa application of a specific individual.

   e. The document originally included in Part B of the record at pages 13-14 is a telegram, dated July 18, 1996, from the American Consulate in Rio De Janeiro

 to the Department of State and other agencies regarding personal information in a visa processing database.

 f. The document originally included in Part B of the record at page 15 is a telegram, dated April 26, 1996, from the Department of State to the American Consulate in Rio De Janeiro regarding personal information in a visa processing database.

 g. The document originally included in Part B of the record at pages 16-17 is a telegram, dated April 3, 1996, from the American Consulate in Rio De Janeiro to the Department of State and other agencies regarding the visa application of a specific individual.

 h. The document originally included in Part B of the record at pages 18-19 is a telegram, dated May 3, 1996, from the American Consulate in Rio De Janeiro to the Department of State and other agencies regarding the visa application of a specific individual.

 i. The document originally included in Part B of the record at page 20 is a telegram, dated June 6, 1996, from the Department of State to the American Consulate in Rio De Janeiro regarding personal information in a visa processing database.

 j. The document originally included in Part B of the record at page 21 is a telegram, dated July 10, 1996, from the Department of State to the American Consulate in Rio De Janeiro regarding the visa application of a specific individual.

 k. The document originally included in Part B of the record at pages 22-23 is a telegram, dated July 30, 1996, from the American Consulate in Rio De Janeiro to the Department of State and other agencies regarding the visa application of a specific individual.

 l. The document originally included in Part B of the record at page 24 is a telegram, dated August 5, 1996 from the American Consulate in Rio De Janeiro to the American Embassy in Brasilia regarding visa applications of specific individuals.

 m. The document originally included in Part B of the record at page 26 is a telegram, dated August 27, 1996, from the Department of State to the American Consulate in Rio De Janeiro regarding visa applications of specific individuals.

 n. The document originally included in Part B of the record at page 381 is a telegram, dated April 16, 1996, from the American Consulate in Rio De

Janeiro to the American Embassy in Mexico regarding the visa application of a specific individual.

o.  The document originally included in Part B of the record at page 562 is an email, dated January 21, 1998, regarding the visa application of a specific individual.

12) Part B also includes some sensitive material that pertains to internal deliberations of the United States Department of State.

I declare under penalty of perjury that the foregoing is true and correct.

_____          ___August 26, 2003___
Julie Oettinger                                              (date)

UNITED STATES DISTRICT COURT *undated*
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Karl Olson, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 02-1371 (GK) ECF |
| ) | |
| Colin Powell, et. al., ) | |
| ) | |
| Defendants. ) | |

**NOTICE OF FILING OF ADMINISTRATIVE RECORD PARTS A & B –
PART B IS FILED UNDER SEAL**

Defendants, by their undersigned attorneys, hereby file the unclassified administrative record in this case. The administrative record, compiled by the Executive Secretary of the Foreign Service Grievance Board ("FSGB") of the Department of State, consists of two parts – Part A and Part B. Part A contains two documents and Part B contains fifteen documents that are considered confidential records pursuant to Section 222(f) of the Immigration and Nationality Act (8 U.S.C. 1202(f)). In accordance with that section, these documents or portions thereof are records of the Department of State and/or of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas to enter the United States. Accordingly, these documents cannot be filed with the public administrative record in this matter.

The Department of State would be prepared to make these document available in accordance with Section 222(f)(1) of the Immigration and Nationality Act, which provides that certified copies of such records may be made available to a court which certifies that the information contained in the records is needed by the court in the interest of the ends of justice in a case pending before the court.

093

Part B of the record also includes four documents and portions of three others that are properly classified in accordance with Executive Order 12958 on National Security Information.

Classified documents or portions thereof cannot be part of the public filing. Consistent with procedures in other cases involving review of the administrative record where classified information is involved, the Department of State is prepared to make the four documents and portions of the three documents available for the Court's *in camera, ex parte* review, pursuant to procedures established by the Court and attorneys representing the Department of State. See, e.g., Holy Land Foundation for Relief & Development v. John Ashcroft, 333 F.3d 156 (D.C. Cir. 2003); People's Mojahedin Organization of Iran v. Department of State, 327 F.3d 1238 (D.C. Cir. 2003).

Part B also contains some sensitive material that pertains to internal deliberations of the United States Department of State. Pursuant to the Court Order of August 27, 2003, Part B of the Administrative Record is filed under seal.

The Declaration of Julie Oettinger provides additional information regarding Parts A and B of the administrative record.

Respectfully submitted,

ROSCOE C. HOWARD, JR., DC Bar #246470
United States Attorney

MARK E. NAGLE, DC Bar #416364
Assistant U.S. Attorney

2

_____
LISA BARSOOMIAN, DC Bar #448398
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530
(202) 305-4851

**OF COUNSEL:**
JULIE OETTINGER
Office of the Legal Adviser
U.S. Department of State

*Attachment 11 - page 1*

# EER DATA SUMMARY AND SUBMISSION CONTROL
(Data is for PER/PE use only)

## SUBMISSION CONTROL

| DATE RECEIVED IN POST/BUREAU | DATE RECEIVED IN PER/PE | DATE RELEASED TO DEPARTMENT FILES |
|---|---|---|
|  |  |  |

**NAME OF EMPLOYEE BEING RATED:** OLSON, Karl Gunnar

**TYPE OF REPORT:**
- REGULAR ☒
- CAREER CANDIDATE ☐
- VOLUNTARY ☐
- INTERIM: Change of Rater ☐  Duties ☐  Assignment ☐

**GRADE:** FS-03
**SSN:** 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
**POSITION TITLE:** Consular Officer

**POST OR ORGANIZATION:** Rio de Janeiro, Brazil
**PERIOD COVERED:** From 09-17-93 To 04-15-94

**RATER:** Layton R. Russell
**TITLE:** Consul    **GRADE:** FS-01

**REVIEWER:** David E. Zweifel
**TITLE:** Consul General    **GRADE:** FE-MC

A. [signature] 5/3/94
B. [signature] 5/6/94

I acknowledge receipt of a copy of this report

C. _____ (Employee's signature upon completion of Section VII)   (Date)

## REVIEW PANEL STATEMENT AND CHAIRPERSON'S SIGNATURE (Completed by Review Panel)

A. Examples of Performance: Specific examples have been provided to support the ratings given the employee. _____ Yes

B. Certification: This report has been prepared according to the regulations and contains no inadmissible material.

Date Completed | Panel Chairperson (type name) | Signature

## EVALUATION OF OVERALL PERFORMANCE AND ACCOMPLISHMENT FROM PAGE 2 AND PAGE 3 (Completed by Rater)

**GENERAL APPRAISAL:**

|  | YES | NO |
|---|---|---|
| SFS Member - 1. Adjustment of Salary Level – Performance was excellent or better | ☐ | ☐ |
| 2. Member is recommended for recertification - Performance was excellent or better | ☐ | ☐ |
| 3. Recommended for Performance Pay | ☐ | ☐ |
| All Classes - Performance was satisfactory or better | ☒ | ☐ |

## EVALUATION OF POTENTIAL FROM PAGE 4 (Completed by Rater)

**GENERAL APPRAISAL:** (Check block that best describes overall potential. Must be identical to page 4.)

1. For Career Candidates only: Assessment of career potential as a Foreign Service Officer or Foreign Service Specialist:
   - ☐ Unable to assess potential from observations to date
   - ☐ Candidate is unlikely to serve effectively even with additional experience
   - ☐ Candidate is likely to serve effectively but judgment is contingent on additional evaluated experience
   - ☐ Candidate is recommended for tenure and can be expected to serve successfully across a normal career span

2. For other Foreign Service employees:
   - ☐ Shows minimal potential to assume greater responsibilities
   - ☐ Has performed strongly at current level but is not ready for positions of significantly greater responsibility at this time
   - ☐ Has demonstrated the potential to perform effectively at next higher level
   - ☒ Has demonstrated potential to perform effectively at higher levels
   - ☐ Has demonstrated exceptional potential for much greater responsibilities now

FORM DS-1829 2-93

When completed on Foreign Service personnel, this is an efficiency report which shall be subject to inspection only by those persons authorized by Sec. 604 of the Foreign Service Act of 1980.

716

*attachment 11 - page 2*

See Instructions Before Completing
(March 1993)

| U.S. DEPARTMENT OF STATE<br>U.S. FOREIGN SERVICE<br>EMPLOYEE EVALUATION REPORT | NAME OF EMPLOYEE BEING RATED (Surname first)<br>OLSON, Karl Gunnar |
|---|---|
| TYPE OF REPORT<br>REGULAR ☒  INTERIM ☐  VOLUNTARY ☐ | GRADE: FS-03   SSN: 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 |
| Annual ☒ | POSITION TITLE: Consular Officer |
| POST OR ORGANIZATION<br>Rio de Janeiro, Brazil | PERIOD COVERED<br>From 09-17-93 to 04-15-94 |
| RATER (Signature)<br>Layton R. Russell<br>TITLE: Consul   GRADE: FS-01 | REVIEWER (Signature)<br>David E. Zweifel<br>TITLE: Consul General   GRADE: FE-MC |

**I. EMPLOYER'S JOB AND WORK REQUIREMENTS** (Established by Rater, Reviewer and Employee)

A. Describe the position and where it fits in the staffing pattern; indicate the number and kind of employees supervised.

The rated officer is Chief of the Non-Immigrant Visa (NIV) Unit, supervising two junior officers and 7 FSNs. The officer reports directly to the Chief of the Consular Section. When the section chief is absent, the officer also exercises managerial responsibility for American citizens services, immigrant visas and the accountable consular officer function.

B. Divide work requirements into two categories, continuing responsibilities and specific objectives (including, as appropriate, professional development activities); delineate in descending priority order. Include specific requirements relating to needs of other agencies.

Continuing Responsibilities:

Manage non-immigrant visa operations processing well over 100,000 applications per year, one of the highest NIV workloads per officer of any post in the developing world.
Improve efficiencies in NIV operations.
Increase use of the consular automation, making suggestions to Washington and the Embassy in Brasilia to improve reliability of consular computer operations.
Ensure that all security and internal controls procedures are followed.
Maintain high quality of consular officer decisions on visa applications, identifying and refusing fraudulent applications.
As Anti-Fraud Officer, maintain an active program against organized fraud.
Provide advice to other consular officers in all areas of consular work.

Specific Objectives:

1. Change methods of non-immigrant visa processing to accommodate higher volumes without significant increases in staff.
2. Conduct surveys of non-immigrant visa issuances to determine whether visa recipients returned to Brazil. Use survey results to improve visa adjudication.

C. Describe any special circumstances influencing the work program.

The Consular Section is compressed into a small sealed space for security reasons. The air conditioning system did not function for half the rating period (Summer). Culturally based expectations of Brazilians exceed any level of services we can provide. Management here is a real challenge.

FORM DS-1829
3-93

When completed on Foreign Service personnel, this is an efficiency report which shall be subject to inspection only by those persons authorized by Sec. 604 of the Foreign Service Act of 1980.

717

## IIA. EVALUATION OF OVERALL PERFORMANCE AND ACCOMPLISHMENT (Completed by Rater)
### ALL CLASSES EXCEPT SENIOR FOREIGN SERVICE

**A. General Appraisal**
All classes—Performance was satisfactory or better. (If no, see instructions for documenting unsatisfactory performance)   ☒ Yes   ☐ No

**B. Discussion:** Performance—strengths and weaknesses—is evaluated in terms of the six competency groups listed below. (See instructions for definitions and list of competencies within groups.) Items 1 through 5 must be addressed with at least one competency from each group. Foreign Language Competency (Item 6) should be addressed for all employees. If mandatory provisions apply, see instructions.

1. Substantive Knowledge   2. Leadership   3. Managerial Skills   4. Intellectual Skills   5. Interpersonal Skills
6. Foreign Language Skills *(complete per instructions)*

Mr. Olson has an excellent knowledge of the laws and regulations relevant to consular work and applies them reasonably and effectively. He also has complete and detailed knowledge of automated consular systems, and has used this knowledge to good advantage in improving the efficiency of our day-to-day visa operations. He completed training of our staff in the full use of the automated non-immigrant visa processing system (NIVCAPS) within days of arrival, with reduced staff time in filing refused visa applications an immediate benefit to us.

Mr. Olson provides effective and equitable leadership. He is decisive and communicates his decisions and opinions in clear and unambiguous terms. His dedication to achieving organizational goals is evident to all and he successfully instills subordinates with a team spirit, thereby making the most of their talents. In arriving at several difficult decisions regarding refocusing scarce personnel resources, he fully explained the logic of the new policies to his staff, and immediately gained their enthusiastic support. By deciding to focus our attention on actually making visa decisions and processing applications, rather than catering to applicants' desires for personalized attention to the most trivial requests, we have maintained same-day service to all walk-in applicants with no application limit, a significant accomplishment.

Mr. Olson's managerial ability is perhaps his greatest asset. He is achievement-oriented to the maximum degree, and has an intense interest in improving systems and operational effectiveness. One of his more significant procedural changes involved a new physical layout in our waiting room and the manner in which applicants are handled prior to their interview, which considerably reduced time lost by officers between interviews. Radically different policies and procedures for filing visa applications have been beneficial not only to our own operations, but to the applicants. A considerable savings of FSN time has been realized by these measures, probably in the neighborhood of 8 to 12 hours per week.

Intellectual ability is another area of relative strength. An extremely well-organized mind allows Mr. Olson to draft correspondence in a style which presents his thoughts in a clear and convincing manner and, although containing great detail, maintains the reader's interest. Mr. Olson has an extremely high level of cultural sensitivity and, in the relatively short time he has been here, has developed an unusual knowledge of Brazilian culture. This has been a major asset in allowing him to minimize any negative reaction to new policies affecting the public.

Mr. Olson does an excellent job in guiding and motivating the first-tour officers under his supervision. He is genuinely concerned for their morale and career development and includes them in representational events at his home. Furthermore, by eliminating unnecessary documents submitted by travel agents with visa cases, Mr. Olson removed a major source of irritation which negatively affected Junior Officer morale.

## III. EVALUATION OF POTENTIAL (Completed by Rater)

**A. General Appraisal** (Check block that best describes overall potential)

1. For Career Candidates only: Assessment of career potential as a Foreign Service Officer or Foreign Service Specialist
   - ☐ Unable to assess potential from observations to date
   - ☐ Candidate is unlikely to serve effectively even with additional experience
   - ☐ Candidate is likely to serve effectively but judgment is contingent on additional evaluated experience
   - ☐ Candidate is recommended for tenure and can be expected to serve successfully across a normal career span

2. For other Foreign Service employees:
   - ☐ Shows minimal potential to assume greater responsibilities
   - ☐ Has performed strongly at current level but is not ready for positions of significantly greater responsibility at this time
   - ☐ Has demonstrated the potential to perform effectively at next higher level
   - ☒ Has demonstrated potential to perform effectively at higher levels
   - ☐ Has demonstrated exceptional potential for much greater responsibilities now

**B. Discussion**

1. Potential is evaluated in terms of the competency groups listed in Section II. Cite examples illustrating strengths and weaknesses in competencies most important to your judgment.
2. For career candidates, discuss potential for successful service across a normal career span; for Senior Foreign Service, discuss potential for highest and broadest responsibilities; for all others, discuss potential for advancement.

Mr. Olson's strengths are in the areas of managerial and intellectual skills. His ability to analyze correctly and to solve operational problems, while appropriately considering the human element and cultural differences, is extremely high. By discussing proposed standard operating procedures with his staff before circulating them after my formal, written approval, he avoids practical problems while ensuring that his staff feel comfortable in implementing the policy. Mr. Olson is an accomplished supervisor, who both accepts responsibility and shares it with his subordinates. To illustrate the latter point, I would cite an American citizen death case which recently came up during my absence. The case was highly sensitive and had direct White House interest. Even though the American citizens services officer was a first-tour junior officer, Mr. Olson gave him appropriate guidance, but also maximum responsibility. In this way, he uses the talents of his subordinates to full advantage and contributes to their career development.

Mr. Olson's ability to run his own unit is well established and continues to improve. He is highly skilled in motivating others to work toward organizational goals and instills a true team spirit in his subordinates. Following his assignment in Rio he will be fully ready to assume duties as chief of a small consular section or to head a larger unit within a large consular section.

**C. Areas for Improvement:** The following must be completed for all employees. Employees should be made aware of areas where they should concentrate their efforts to improve. Based on your observation of the employee in his/her present position, specify at least one area in which he/she might best direct such efforts. Justify your choice. (The response is not to be directed to need for formal training.)

In his effort to explain things orally in clear and complete terms, Mr. Olson tends to unnecessarily cover elementary points, and, especially in our busy environment, this sometimes causes him to lose the attention of his listeners. A greater degree of succinctness would make him a more effective speaker.